Curia, per Johnston, Ch.
We are entirely satisfied that the decree of the ordinary was no bar to the plaintiffs’ right of recovery founded on the after-misconduct and neglect of the administrator, and deem it unnecessary to add any thing to the remarks of the Chancellor on that point.
The remaining question presented by the appeal is, whether the sureties were properly made parties to this suit. It is contended that they were not liable to be brought in until an action shall have been brought against him and prosecuted to judgment.
*127 By an action brought against him, I suppose, is meant an action upon his administration bond; and as no such action can be effectually prosecuted, until the amount, chargeable to him upon the account of his administration is settled, — the substance of the proposition is, that the sureties are not liable to be called on, until the tedious process is gone through of first taking the account here, and then resorting to a suit at law upon the bond. But surely the delays and expenses of litigation are sufficient, without adding to them by such a proceeding, unless some valuable purpose is subserved by it.
If sureties are sureties at all, they must be eventually liable for whatever is justly chargeable to their principal: and if they are to be made liable for this, the shortest and least expensive process by which it is done is best for them ; provided it does not exclude them from any means of defence to which they are entitled.
The course of proceeding indicated by this ground of appeal, involves, first, an account, and then an action on • the bond for the amount found to be due on the accounting. It must be recollected, that according to the objection now urged, this account is to be taken against the administrator alone. When the bond is suéd on, the account thus taken, must either be conclusive, on the sureties, or they must be let in to objections, which, in substance, require it to be taken over again. It may be asked, how would the sureties be benefited, under either of these rules ? If the account were held conclusive on them, they might complain, with apparent justice, that they were made responsible for what they were never allowed an opportunity to contest. If they were allowed to contest the account, in what respect would their advantages be superior to what they would have been, if they had been allowed to participate originally in the accounting? Manifestly their condition would be just the same ; except that, in the one case, they would be subjected to delays and expenses, from which, in the other, they would be exempt.
It is positively for the benefit of the sureties that they should be brought in, in the first instance, along with their principal, especially in a case like the present, where the principal is insolvent. To him it may be immaterial to what extent the account is swelled. He may be careless and indifferent in his defence ; and without exhibiting palpable evidences of collusion, he may, in a variety of ways, advance the interest of the adverse party. If he should fold his arms, or if he should fail to come up to the just measure of his defence; is it no privilege to the sureties to *128 be allowed to defend themselves, by supplying his deficiencies ? And is it no advantage that all this may be done under the costs of one suit instead of many ?
I know that the rule in this State was formerly different. The earlier cases mentioned in McBee vs. Crocker, (M’M. Eq. 488,) and which governed me in that case, shew this. I conformed to them, when I said (Ib. 486,) that “sureties to an administration bond, are, in no respect, to be considered as trustees, or accountable in this court as such. They are only parties to a law-undertaking, and to be held responsible in damages for the defaults of their principal. They can be sued only at law, and there only after the default of their principal has been established.” But I was overruled in that case: and an exception was established to the general rule, to the effect that where the principal is out of the State, or insolvent, the sureties may be brought in to render the account: and the reasoning of the Appeal Court shewed a repugnance to the general rule bordering on a disposition to set it aside, and to recur to a practice more convenient, and more calculated to prevent circuity of litigation. This was as early as 1831.
In the recent case of Gayden vs. Gayden, (Ib. 444-5-6,) it was held that co-administrators are regarded in equity as sureties for each other, although at law they stand differently : and it is said, that when such sureties are before the court, “ it would be in contradiction to all the maxims of the court to refuse full relief (which will put an end to litigation,) and send the complainants to litigate in another jurisdiction, where less ample justice can be done.” “ It is true,” says the court, “ that in the case of Glenn vs. Conner, (Harp. Eq. 267,) followed by that of Teague vs. Dendy, (2 McC. Ch. 209,) where a bill was filed against the principal, to which the sureties were made parties, the bill was dismissed as against the sureties. But in McBee vs. Crocker, where one administrator was absent from the State, and only made a party by advertisement, it was held that the sureties were properly made parties, along with the other administrator , and a decree was made against them. It is said, in that case, by the Judge who delivered the opinion of the court, ' in equity, the court possesses all the powers to do exact justice between the parties. It can examine the accounts, fix the administrator’s liability, and direct him to be pursued to insolvency, before the sureties shall be liable to process to enforce the decree.’ To this,” continues the court, “ may be added, that, if the surety *129 should be compelled to pay the money, .it can afford him the process of the court to re-imburse himself, at any time there should appear to be a chance of his doing so. The Judge” (continues the Chancellor in Gayden vs. Gayden,) “ expresses his dissatisfaction with Glenn vs. Conner, and Teague vs. Dendy, and I concur in his dissatisfaction. They are opposed to the general maxim of equity, that all persons having material interests must be made parties to the suit. Can it be doubted that the sureties have a most material interest in the subject of the suit against their principal? Great injustice might be done to sureties by failing to make them parties to a suit against an insolvent principal, who might feel little interest in defending himself.”
It is ordered, that the decree be affirmed, and the appeal dismissed.
JOHNSON, Harper and Dunkin, CC. concurred.